**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| *ex rel*. ROBERT SIMMONS, | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: PWG-11-cv-2971** |
| **SAMSUNG ELECTRONICS** | * | |
| **AMERICA, INC.,** | * | |
| **Defendant.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION AND ORDER**

Relator Robert Simmons ("Relator" or "Simmons") moves for an award of 22% of the $2.3 million settlement between the United States and Samsung Electronics America, Inc. ("Samsung"), pursuant to the *qui tam* relator's share provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(d)(1). Relator's Mot., ECF No. 38. Simmons contends that his contribution to the Government's settlement with Samsung entitles him to 22% of the settlement proceeds. Relator's Mem. 1, ECF No. 38-1. The Government opposes Simmons's motion and files a cross-motion, arguing that an award of 16% of the settlement is appropriate. Gov't Mot. & Mem., ECF Nos. 41, 41-1. For the reasons set forth below, the cross-motions shall be granted in part and denied in part, and the Relator shall receive an 18% share of the settlement proceeds.

## I.     BACKGROUND

Simmons, who worked as a Solutions Architect at Samsung from June 2007 to July 2011, filed a *qui tam* complaint against Samsung and Summit Government Group, LLC ("Summit") on October 18, 2011, alleging that Samsung and Summit violated the FCA by submitting false

claims for Samsung computer products sold to the United States under Summit's General Services Administration ("GSA") contract that were not compliant with the Trade Agreements Act. Compl. ¶ 2, ECF No. 1. Concurrently, pursuant to 31 U.S.C. § 3730(b)(2), Simmons provided the Government with a "written disclosure of substantially all material evidence and information [he] possess[ed]." 31 U.S.C. § 3730(b)(2); Relator Statement 5, Gov't Mem. Ex. 1, ECF No. 41-3. During the course of its investigation, the Government twice met with Simmons: interviewing him on November 21, 2011 in Baltimore, Maryland and again on February 7, 2012 in Washington, D.C. Relator's Mem. 5, 7; Gov't Mem. 2, 4.

On January 16, 2014, the Government partially intervened against Samsung and declined to intervene with respect to Summit.[1] ECF No. 16. On July 17, 2014, the Government and Simmons filed a joint stipulation of dismissal as to Samsung following the execution of a settlement agreement between Samsung, Simmons, and the Government. ECF No. 30. The settlement agreement provides that Samsung shall pay a settlement amount of $2.3 million to the Government, and that Simmons claims entitlement under 31 U.S.C. § 3730(d) to a share of the settlement award. Settlement Agr., ECF No. 30-1. On August 15, 2014, I dismissed the original Complaint with prejudice and retained jurisdiction to decide Simmons's share amount. ECF No. 31. He subsequently filed a Motion for Immediate Award of Statutory Minimum Relator Share on August 27, 2014, ECF No. 32, which I denied as moot, ECF No. 37, after the parties filed a Joint Stipulation of Resolution, stating that the Government "informed the Relator that authority was granted to pay Relator the 15 percent of the $2,300,000 settlement with Samsung." ECF No. 36.

---

[1] The Government declined to intervene against Summit after the Government investigation yielded no evidence that Summit's GSA schedule was used for any sales of Samsung products made in violation of the TAA. Buffone Decl. ¶ 14, Gov't Mem. Ex. 2, ECF No. 41-4.

The parties continued to discuss a final resolution of Simmons's share, but failed to reach an agreement, although the Government paid Simmons $345,000, or 15% of the settlement. Gov't Mem. 1.  Simmons, however, insisted that he be paid more.  Subsequently, the parties filed the pending cross-motions regarding the appropriate share to which Simmons was entitled. Simmons filed a reply and opposition, ECF No. 42, such that his motion has been fully briefed. The Government did not file a reply, but the time for doing so has passed.  *See* Loc. R. 105.2(a). Having reviewed the filings, I find that a hearing is not necessary.  *See* Loc. R. 105.6.  Upon careful consideration of the briefing and the exhibits submitted by the parties, I conclude that Simmons is entitled to an award of an 18% share of the settlement reached between the Government and Samsung.

## II.      STANDARD OF REVIEW

Under the FCA, when the Government intervenes and settles a *qui tam* case, a relator receives between 15% and 25% of the proceeds of the settlement of the claim.  31 U.S.C. § 3730(d)(1).   The FCA states that the amount awarded to the realtor is based on "the extent to which the person substantially contributed to the prosecution of the action," *id.*, but otherwise does not specify any criteria for this determination.  The parties acknowledge that the actual percentage awarded largely is left to the Court's informed discretion.  *See* Relator's Mem. 13; Gov't Mem. 8.

Courts traditionally treat the 15% minimum statutory share as a "finder's fee."  *United States ex rel. Alderson v. Quorum Health Grp. Inc.*, 171 F. Supp. 2d 1323, 1331 (M.D. Fla.

2001).[2]  This 15% "incentive compensation" is paid to a relator ""even if that person does nothing more than file the action in federal court."" *Id*. at 1332 n.29 (quoting 132 Cong. Rec. H9382-03 (Oct. 7, 1986) (statement of Rep. Berman)).  Increased awards beyond 15% are provided for greater assistance, such as in ""those cases where the person carefully develops all the facts and supporting documentation necessary to make the case required by law, and where that person continues to play an active and constructive role in the litigation that leads ultimately to a successful recovery to the United States Treasury."" *Id*. at 1332 (quoting 132 Cong. Rec. H9282-03 (Oct. 7, 1986) (statement of Rep. Berman)).  The maximum 25% award thus is reserved for relators who "actively and uniquely assist the government in the prosecution of the case." *United States ex rel. Burr v. Blue Cross & Blue Shield of Fla., Inc*., 882 F. Supp. 166, 168 (M.D. Fla. 1995).  Because the text of the FCA is silent with respect to criteria for awards above the 15% minimum and below the 25% maximum, courts frequently look to the legislative history of the FCA and the Department of Justice internal guidelines ("DOJ guidelines") to inform their calculation of the appropriate relator's share.  *E.g*., *Alderson*, 171 F. Supp. 2d at 1331.  Although the aforementioned factors do not bind this Court, I will rely on them as useful and appropriate criteria to help determine Simmons's share.

III.    DISCUSSION

A.    Legislative History Factors

The factors discussed in the legislative history of the FCA stem from the amendments to the act.  They specify what to consider in determining the relator's share: (1) the significance of the information provided to the government by the *qui tam* plaintiff; (2) the contribution of the

---

[2] Neither the Court of Appeals nor the district courts in the Fourth Circuit have issued opinions on the award of relator's shares; I have relied on other jurisdictions for guidance in this Memorandum Opinion.

*qui tam* plaintiff to the result; and (3) whether the information in the suit provided by the relator was previously known to the government.  S. Rep. No.99-345, at 28 (1996), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5293.

With respect to the contribution of significant information by the *qui tam* plaintiff, Simmons's allegations, and the investigative leads contained therein, certainly were key to triggering the Government's investigation of, and eventual settlement with, Samsung.  But Simmons was unable to provide further knowledge of the scheme beyond the allegations contained in the complaint and in the disclosure statement.  Indeed, his disclosure statement stated that he learned of Samsung selling goods that were not TAA compliant "primarily through his colleague," whom I will refer to as "Mr. I."  Relator Statement 5.  Mr. I worked as Samsung's Federal Contract Manager and handled direct sales by Samsung to the federal government. *Id*. at 1.  Simmons was employed by Samsung as a Solutions Architect role, based in Lexington, Kentucky, where he was responsible for technical architecture for customer solutions.  *Id*. Although Simmons "worked closely" with Mr. I, *id*., he did not deal with Samsung's contracts and was not privy to and did not have first-hand knowledge of important documents, conversations, and other information that he could provide to the Government.  This was apparent at the November 21, 2011 interview, when Simmons explained to the Government that he worked remotely out of his home in Kentucky while employed at Samsung, and that he worked mainly on enterprise accounts and only "sometimes became involved with government sales by helping Samsung understand the technical requirements."  Buffone Decl. ¶ 4, Gov't Mem. Ex. 2, ECF No. 41-4.  Simmons possessed limited personal knowledge to share with the Government about the details of how Samsung's government sales distribution chain worked, offering instead that Mr. I could join the interview because Mr. I held the key role in government

sales. *Id.* ¶ 5. Moreover, Simmons stated that all documents in his disclosure statement were obtained from Mr. I. *Id.* ¶ 7. At the February 7, 2012 interview, Simmons again provided "only a general understanding [of the government sales distribution chain] and could not provide a detailed understanding of the contracts under which Samsung products were sold to the United States in violation of the TAA." *Id.* ¶ 9. Thus, although Simmons's allegations triggered the Government's investigation, he did not otherwise provide significant information to the Government to bolster the case against Samsung.

The second Senate factor—the *qui tam* plaintiff's contribution to the result—is discussed in *Alderson*, where the court determined that the relator's contribution to the settlement merited a 24% share because the relator "contributed decisively to nearly every aspect of the case from the initial investigation to the conclusion of mediation." *Alderson*, 171 F. Supp. 2d at 1333. Here, Simmons notes that under the statutory scheme, the Government is expected to contribute more substantially to the resolution of a case in which it intervenes. Relator's Reply 2. As Simmons sees it, this means that he is expected to contribute less, and therefore he is entitled to a 22% share despite his lower relative contribution to the result. *Id.* Although the FCA does assume that the Government "shall have the primary responsibility for prosecuting the action," 31 U.S.C. § 3730(c)(1), nothing in the record indicates that Simmons meaningfully participated in the investigation or the settlement on even a secondary level. During the Government's investigation, Simmons's role was limited to "provid[ing] suggested search terms for documents." Buffone Decl. ¶ 12. Although he asserts that he "offered the Government whatever assistance it needed to view the documents and data produced by Samsung or to evaluate damages," Bennett Aff. ¶ 25, Relator's Mem. Ex. 1, ECF No. 38-2, Simmons is not entitled to a greater share of the settlement for help that he wanted or "offered" to contribute; the relevant

factor considers the help he did contribute.  And Simmons's contribution to the Government's settlement with Samsung necessarily was limited when the Government did not accept his counsel's offer to help with the investigation.  Buffone Decl. ¶ 12.  Simmons argues that it would be "fundamentally unfair" to penalize him for not assisting the Government when the Government rejected his offers of aid, Relator's Reply 6, but the Government is entitled to turn down such offers "due to concerns over arguments regarding potential waiver of privilege and protection by allowing a non-government entity to use [the Government] database and also due to [the Government's] view, from the two relator interviews, that Mr. Simmons did not have the expertise to add substantial assistance to the investigation," *id.* ¶ 12.  The fact remains that Simmons did not "contribute[] decisively to nearly every aspect of the case," *Alderson*, 171 F. Supp. 2d at 1333, to merit increasing his award share on this account.  Further, he neither participated in settlement negotiations nor did he help negotiate the settlement amount.  *Cf. United States ex rel. Pedicone v. Mazak Corp.*, 807 F. Supp. 1350, 1353 (S.D. Ohio 1992) (relator deserved large percentage of the sizable settlement which he negotiated and which benefitted the United States).  Consequently, Simmons's contribution to the settlement cannot be viewed as a significant factor to increase the award share.

The final evaluative factor mentioned in the legislative history is whether the Government previously knew the information provided by the relator.  This factor wholly weighs in Simmons's favor, as no evidence exists to indicate that the Government would have discovered Samsung's actions, and received the eventual settlement, absent information set forth in his original complaint.

### B.      DOJ Guidelines

The DOJ guidelines were developed to assist DOJ attorneys "[w]hen trying to reach agreement with a Relator as to his share of the proceeds, or proposing an amount or percentage to the court . . . ."  *U.S. ex. rel. Shea v. Verizon Commc'ns, Inc*., 844 F. Supp. 2d 78, 84 (quoting 11 FCA & Qui Tam Quarterly Rev., Oct. 1997, at 17–19).  Courts often use these factors to guide their determination of the award amount.  *E.g*., *Alderson*, 171 F. Supp. 2d at 1333–34; *Shea*, 844 F. Supp. 2d at 84.  Under the DOJ guidelines, the potential factors for increasing the share are

> (1) The relator reported the fraud promptly; (2) When he learned of the fraud, the relator tried to stop the fraud or reported it to a supervisor or the Government; (3) The *qui tam* filing, or the ensuing investigation, caused the offender to halt the fraudulent practices; (4) The complaint warned the Government of a significant safety issue; (5) The complaint exposed a nationwide practice; (6) The relator provided extensive, first-hand details of the fraud to the Government; (7) The Government had no knowledge of the fraud; (8) The relator provided substantial assistance during the investigation and/or pre-trial phases of the case; (9) At his deposition and/or trial, the relator was an excellent, credible witness; (10) The relator's counsel provided substantial assistance to the Government; (11) The relator and his counsel supported and cooperated with the Government during the entire proceeding; (12) The case went to trial.

In addition to these factors, jurisdictions also have considered the emotional strain and financial burdens attendant to pursuing a *qui tam* action, recognizing that such burdens may warrant increasing the relator's share.  *See Alderson*, 171 F. Supp. 2d. at 1337 (citing *United States v. NEC Corp*., 11 F.3d 136, 138–39 (11th Cir. 1993) (relator's share is intended, in part, "to compensat[e] the relator for the substantial time and expense involved in bringing a qui tam action" and for his "time and trouble"); *United States ex rel. Burr v. Blue Cross & Blue Shield of Fla., Inc*., 882 F. Supp. 166, 169 (M.D. Fla. 1995) ("A relator may be entitled to the statutory maximum percentage in situations where the relator has suffered personal or professional hardship.")).

The DOJ also issued guidelines that should be considered for decreasing the percentage of the relator's share.  They are:

> (1) The realtor participated in the fraud; (2) The relator substantially delayed in reporting the fraud; (3) The relator, or relator's counsel, violated FCA procedures; (4) The relator had little knowledge of the fraud or only suspicions; (5) The relator's knowledge was based primarily on public information; (6) The relator learned of the fraud in the course of his Government employment; (7) The Government already knew of the fraud; (8) The relator, or realtor's counsel, did not provide any help after filing the complaint, hampered the Government's efforts in developing the case, or unreasonably opposed the Governments' position in litigation; (9) The case required a substantial effort by the Government to develop the facts to win the lawsuit; (10) The case settled shortly after the complaint was filed or with little need for discovery; (11) The FCA recovery was relatively large.

*Alderson*, 171 F. Supp. 2d at 1333.

Applying the DOJ factors, Simmons argues that he is entitled to a 24% share of the settlement proceeds because he "promptly reported the fraud; exposed a nationwide practice about which the Government had no prior knowledge; provided substantial, detailed information about the fraud, including making himself available for hours of interviews; provided dozens of documents to the Government; and demonstrated a continued willingness to remain engaged and helpful in the investigation."   Relator's Mem. 19.   Further, he asserts that he "has suffered emotional and financial hardships in his role as a whistleblower," as he was fired from a job, despite good performance metrics, in August 10, 2012 after his whistleblower status came to light.  Bennett Aff. ¶ 27–29.

The Government counters that Simmons is entitled to a 16% share because he only met the minimum qualifications to serve as a relator by passing along second-hand information from Mr. I.  The Government contends that Simmons "provided limited insight, based on second-hand knowledge, regarding any of the mechanisms by which any of the allegedly false claims were actually submitted," and only was able to identify one contract, which ultimately did not give

rise to any viable claims to be pursued by the Government. Gov't Mem. 12. The Government states that the only DOJ factor favoring increasing Simmons's share is the fact that the Government did not know of the fraud before the Simmons's disclosure. *Id*. at 16. Additionally, the Government concedes that the alleged retaliation suffered by Simmons on account of his whistleblower status may merit an increased award amount. *Id*. at 17.

Simmons's identification of the Samsung fraud of which the Government was unaware is undisputed. He did not delay in reporting the potential violations to the Government in late 2011, approximately six to nine months after he first learned of the potential TAA violations. Also relevant to increasing the award share are the adverse consequences that Simmons faced at work as a result of his whistleblower status. But, though Simmons and his counsel cooperated with the Government during the proceeding to the extent they were able, he lacked first-hand details of the fraud enabling him to provide substantial assistance during any phase of the investigation. Simmons's own evidence establishes that, after the initial disclosures, his contribution to the investigation conducted by the Government was minimal. Aside from meeting twice with the Government and providing suggested search terms during their investigation, nothing in the record indicates substantial assistance, despite Simmons's willingness to help. The case settled primarily as a result of a substantial effort by the Government to investigate the facts and develop the claim. Thus, absent substantial or unique assistance, Simmons is entitled to an award at the lower end of the statutory range. Upon consideration of the Senate factors and the DOJ Guidelines, and based on all the criteria which I discussed, I conclude that Simmons is entitled to an 18% share of the $2.3 million recovery. He already has been paid $345,000.00. He therefore is owed an additional $69,000.00.

**<u>ORDER</u>**

Accordingly, it is, this <u>1st</u> day of <u>July</u>, <u>2015</u>, hereby ORDERED that

1. Relator's Motion for Award of Relator's Share, ECF No. 38, IS GRANTED IN PART AND DENIED IN PART;

2. The Government's Cross-Motion for Determination of Relator's Share, ECF No. 41-1, IS GRANTED IN PART AND DENIED IN PART; and

3. Relator Robert Simmons is awarded 18 percent of $2,300,000, or $414,000, from which the $345,000 he already was paid shall be deducted, leaving a balance due of $69,000.00.

_____/S/_____
Paul W. Grimm
United States District Judge

lq